## CIRCUIT COURT OF THE CITY OF RICHMOND

Solite Corp.

v.

Richmond, Fredericksburg and Potomac RR.

January 6, 1989

Case No. LL-2589-4

By JUDGE RANDALL G. JOHNSON

This lawsuit arises out of a train derailment which occurred in King George County, Virginia. Plaintiff, Solite Corp., owns a section of railroad track which it uses in its sand and gravel business. Defendant, Richmond, Fredericksburg and Potomac Railroad Company, was under contract with Solite to deliver empty freight cars to Solite's track and to remove those cars after they had been filled. It is Solite's claim that while R. F. & P. was picking up loaded cars on June 5, 1984, from Solite's track, R. F. & P.'s crew negligently caused one of the cars to derail, and that Solite's track was damaged when the undetected derailed car was moved along its tracks. After a three-day trial, a jury returned a verdict for Solite in the amount of $20,000.

At the conclusion of Solite's case-in-chief, and at the conclusion of all the evidence, R. F. & P. asked the Court to strike Solite's evidence on the ground, *inter alia*, that Solite had failed to present appropriate evidence of its damages.[1] Specifically, R. F. & P. cited *Younger v. Appalachian Power Co.*, 214 Va. 662, 202 S.E. 2d 866

---

[1] The other grounds of R. F. & P.'s motion to strike were ruled upon at trial and will not be addressed herein.

(1974), to argue that the appropriate measure of Solite's damages, if any, is not the cost of replacement or repair, but is an amount which must be determined in accordance with the formula set out in *Younger*. Defendant further argued that since plaintiff had failed to present sufficient evidence to allow the jury to apply the *Younger* formula here, plaintiff's evidence must be struck. For the same reasons, defendant also moved to set aside the jury's verdict. Having taken these motions under advisement, the court now determines that they should be overruled.

Initially, it must be noted that by citing *Younger*, R. F. & P. apparently concedes that the general rule for measuring damages for injury to property, diminution in market value, does not apply to this case. In fact, the court in *Younger* stated:

> When diminution in market value can be reasonably ascertained, that is the appropriate measure of damages; but when the damaged property has no ascertainable market value or when market value would be a manifestly inadequate measure, then some other measure must be applied. 214 Va. at 664.

In fact, the evidence presented here is uncontradicted that the character and location of Solite's trackage gives it a value only to Solite. Moreover, while rails, ties, spikes, and the other components of trackage may generally have market values, those values would be "manifestly inadequate" to compensate Solite for the loss of its assembled trackage. Thus, under either the "reasonableness of ascertainment" test or the "manifest inadequacy" test, the general rule does not apply here, and "some other measure must be applied." *Id.*

*Younger v. Appalachian Power Co.* involved four cases in which power transmission poles were damaged by automobiles. The trial court awarded damages to the plaintiff in amounts equal to the cost of replacing the damaged poles. Conceding liability, defendants challenged the formula applied by the trial court in computing damages. Specifically, defendants argued that the appropriate measure of damages was not the cost of purchasing and erecting new poles, but as the cost of replacing the

poles *less* a deduction based on the "used life" of the poles or the "betterment" to plaintiff's transmission system. In other words, defendants argued that the court must first determine the useful life of undamaged poles, then determine how much of that useful life remained for each of the poles that was damaged, and then award damages based only on what was left of the useful life of the damaged poles. The Supreme Court agreed:

> The record shows that Appalachian periodically inspects its transmission system and replaces poles deteriorated in normal usage. From this experience, Appalachian can determine the average useful life of poles in the system. Since in the normal course of doing business Appalachian must bear the expense of replacement costs at some reasonably ascertainable future time, recovery from a tortfeasor of full replacement costs at an earlier time would overcompensate the injury sustained. 214 Va. at 664.

Attempting to draw an analogy between the poles in *Younger* and the rails, ties, spikes, and other damages items here, R. F. & P. argues that damages can only be awarded under the "useful life" formula set out in *Younger*. Defendant further argues that since plaintiff presented no evidence from which the jury could determine the useful life of the items which were replaced, plaintiff failed to carry its burden of proof and, consequently, judgment should be entered in favor of defendant.

On the other hand, Solite argues that a proper analogy cannot be drawn between the transmission poles in *Younger* and the various components of its trackage here. Specifically, Solite states that no definite useful life figures can be assigned to rails, ties, spikes, rail braces, and the other components of railroad tracks. Indeed, there was testimony that some of Solite's rails, which were purchased used by Solite in 1969, have been in service since the 1950's. Thus, according to Solite, *Younger* does not apply.

In considering these two competing arguments, it must be emphasized that they are just that -- arguments. Other than a passing remark, noted above, that "some"

of Solite's rails were initially placed in service in the 1950's, there was absolutely no evidence presented from which it can be determined whether any of the damaged property had a recognized and/or calculable useful life. Thus, the real issue in this case is not whether *Younger v. Appalachian Power Co.* should apply. Rather, the real issue is who has the burden of going forward with sufficient evidence to enable the court or jury to make that determination; that is, does the plaintiff have the burden of presenting evidence to show that its property is not susceptible to useful life calculations in the absence of any evidence from the defendant to show that it is? While I have been unable to locate any case either in Virginia or elsewhere precisely on point, I do not feel that plaintiff should have that burden.

In *Younger*, the Supreme Court recognized that there are "sundry rules for measuring damages" for injury to property, 214 Va. at 664 (quoting *New Jersey Power & Light Co. v. Mabee*, 41 N.J. 439, 441, 197 A.2d 194, 195 (1964)). In fact, it is precisely because of those sundry rules that this court will not place upon plaintiff, in the absence of any evidence on point from the defendant, the burden of presenting evidence to show that one such rule -- the one applied in *Younger* -- does *not* apply here. Indeed, if such burden were on the plaintiff, would not plaintiff also have to show that every one of the *other* "sundry rules," except the rule offered by plaintiff, also does *not* apply, or else have its evidence struck because some other rule cited by defendant was not "disproved?" Since industrious defense counsel will always be able to find at least one of the "sundry rules" which plaintiff neglected to disprove, or can make a good-faith argument for the application of a completely new rule, it would be utterly impossible for the question of damages to ever get to the jury.

The court is convinced that the better practice is to place upon the party advocating a particular rule for measuring damages the burden of going forward with evidence in support of that rule. Thus, while the burden of proving damages remains with the plaintiff throughout the trial, plaintiff need not present evidence that a particular rule for measuring such damages does *not* apply *unless* defendant presents evidence that it does. As was pointed

out in *Younger*, "the sundry rules for measuring damages are subordinate to the ultimate aim of making good the injury done or loss suffered and hence 'The answer rests in good sense rather than in a mechanical application of a single formula'." 214 Va. at 664 (*quoting New Jersey Power & Light Co. v. Mabee, supra*). It simply does not make good sense to require a plaintiff to go forward with evidence regarding a rule advocated by defendant for measuring damages in the absence of any evidence from the defendant to show that such rule should apply. With the liberal rules of discovery available to litigants, such evidence should not be difficult to obtain.

Applying the above discussion to the case at bar, the court will uphold the jury's verdict. Solite's evidence, not contested by R. F. & P., proved that the general rule for measuring damages, diminution in market value, does not apply to this case. Solite than presented evidence from which the jury could reasonably determine damages under a theory of cost of replacement and repair, which is the rule for measuring damages advocated by Solite. Since it is R. F. & P. which now argues that a different rule for measuring damages should have applied, it was incumbent upon R. F. & P., not Solite, to go forward with evidence regarding that rule. Since R. F. & P. did not present such evidence, and since there is no other evidence from which it can be determined that the rule advocated by R. F. & P. should have applied, the issue of damages properly went to the jury under the only theory about which evidence was presented, replacement and repair cost. Accordingly, R. F. & P.'s motions will be denied.